616 A.2d 75

Dennis J. BENNETT, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(McCREARY TIRE & RUBBER COMPANY),
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 1991.

Decided Sept. 17, 1992.

Daniel K. Bricmont, for petitioner.

Stuart W. Benson, III, for respondent.

Before CRAIG, President Judge, PELLEGRINI, J., and BLATT, Senior Judge.

BLATT, Senior Judge.

Dennis J. Bennett (claimant) appeals an order of the Workmen's Compensation Appeal Board (Board) granting the modi-

fication and suspension petition of McCreary Tire & Rubber Company (employer).[1] We affirm.

The claimant was employed by McCreary Tire & Rubber Company (employer) as a heavy tire builder. On March 20, 1981, he suffered a work-related back injury and received total disability compensation pursuant to a notice of compensation payable. In September 1985, the employer retained a rehabilitation specialist, Kathleen Fleming–Loriso (Fleming–Loriso), in an effort to assess alternative employment opportunities for the claimant because the employer was subject to a strike. In response to Fleming–Loriso's inquiry, the claimant refused job training and refused to register with Job Service. Consequently, Fleming–Loriso contacted the claimant's treating physician, Dr. Blakley, who completed a Return to Work Evaluation form indicating that the claimant was capable of performing restricted light duty work.

Thereafter, Fleming–Loriso conducted an employment search which resulted in three job referrals. The claimant's physician rejected the first job offer because of commuting distance. The claimant refused the second job offer, a sales clerk position with Hart's Men's Store, because of dissatisfaction with the wages. The claimant also refused the third job offer, a position with Heasley Fur Shop, because he deemed it unsuitable work.[2] In January 1987, the employer filed a termination petition. In March 1988, the employer amended its petition to seek modification and suspension of the claimant's benefits alleging that he had been medically cleared for light duty employment and had refused valid job offers. The claimant has not worked since July 16, 1987.

The referee found that the claimant was capable of performing light duty work and had refused valid job offers within the claimant's physical restrictions. The referee further rejected

1. This case was reassigned on January 30, 1992.

2. Eight months later the claimant accepted the Heasley position but, because of a seasonal work lag, Heasley assigned the claimant to Mr. Kennedy for whom the claimant worked seven days before quitting following emergency hospital treatment. The claimant also refused the employer's September 1988 offer of a full-time industrial engineering clerk position at pre-injury wages.

the testimony of the claimant and Dr. Blakley that the claimant was physically incapable of performing this work as not credible. The referee further found, based on the availability of the Hart's Men's Store position, that the employer was entitled to a modification to partial disability as of February 13, 1986, and, based on the availability of the Heasley Fur Shop position, that it was entitled to a suspension as of November 3, 1986.

Based on these findings of fact the referee concluded that the employer had met its burden of establishing a change in the claimant's condition enabling him to work and of producing evidence of referrals to then-open jobs which fit the occupational category for which the claimant had been given medical clearance. On appeal, the Workmen's Compensation Appeal Board affirmed the referee's decision and the claimant appeals from the Board's order.[3]

■ On appeal, the claimant raises two issues: (1) whether the Board erred in concluding that the employer established a change in the claimant's medical condition based on objected to and uncorroborated hearsay[4] and (2) whether the referee erred in granting a suspension based on the position at the Heasley Fur Trapping Company.

■ In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), the Supreme Court articulated the test applicable to modification cases.

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability

---

**3.** The scope of review on appeal is confined to whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *City of Scranton v. Workmen's Compensation Appeal Bd. (Walsh)*, 127 Pa.Commonwealth Ct. 89, 560 A.2d 937 (1989).

**4.** The claimant's issue that he had not been apprised of medical clearance for restricted light duty, notwithstanding his ongoing treatment relationship with the approving physician, is waived because raised for the first time on appeal to this Court. *General Electric v. Workmen's Compensation Appeal Bd. (Valsamaki)*, 140 Pa.Commonwealth Ct. 461, 593 A.2d 921 (1991).

must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380.

 The claimant first argues that the referee's finding of a changed condition was premised on uncorroborated, objected to hearsay, specifically job approval forms signed by Dr. Blakley. However, an employer is not required to produce medical evidence of a change in condition when the modification petition is premised not on a change in physical condition, but on the fact that the employer made a medically approved position available to the claimant. *Lukens, Inc. v. Workmen's Compensation Appeal Bd. (Williams)*, 130 Commonwealth Ct. 479, 568 A.2d 981 (1989). The unobjected to Return to Work Evaluation completed by Dr. Blakley in 1985 released the claimant for restricted light duty work.[5] There-

---

5. Contrary to the claimant's assertion in footnote 2 of the brief that an objection had been made but not acted upon, a review of the record demonstrates that the work evaluation form was the only exhibit submitted by the employer that the claimant did not object to, as evidenced by the following colloquy:

REFEREE STEINER: ... The defendant is then offering the reports of Kathleen Flenner [Fleming–Loriso] with attachments and certified mail receipts.
Any objections to their admission into evidence?
MR. McTIERNAN: We would object, Your Honor.
REFEREE STEINER: So noted and marked as Defendant's Exhibit A and claimant counsel's objection is sustained....
MR. BENSON: If I am correct then, you have marked the various packet of reports consisting of her letter of February 9, 1987, the rehabilitation case summary sheet and the various letters advising Mr. Bennett of the job, the job descriptions reviewed and signed by Dr. Blakley?

fore, the employer's burden is not to show a change in condition, but to establish that the job offers were within the claimant's physical capability and then available.

█ The claimant next argues that the position with Heasley Fur Company was not offered in good faith but was a "sham" position created to avoid paying compensation. The job offer was prompted by the employer's agreement to finance the 40 hour per week position at a rate equivalent to the claimant's pre-injury wage. While we acknowledge that the financing arrangement is irregular, we cannot conclude that the position was not "available" within the meaning of *Kachinski* and its progeny.

Prior to this offer, the thirty-seven year old claimant had refused job training, had refused to register with the Job Service which would have conducted an occupational competency evaluation, and had refused a valid part-time job offer. Because of prior business associations between its employees and Mr. Heasley, the employer then inquired if Mr. Heasley would be willing to hire the claimant under the challenged arrangement.

Mr. Heasley testified that though he was disinterested when first approached, he later agreed to hire the claimant because there was no financial risk and because he perceived it as an opportunity to train the claimant for possible entry into the

REFEREE STEINER: I left out Dr. Blakley's job description approval and his report of June 3, 1986. I am going to make them a separate exhibit....
Any objections then to the June 3, 1986 report of Dr. Blakley and the physical restrictions dated October 28, 1986 by Dr. Blakley?
MR. McTIERNAN: We would object to it, Your Honor.
REFEREE STEINER: So noted and marked as Defendant's Exhibit B and claimant counsel's objection is sustained....
Notes of Testimony March 3, 1987 at 4–5, Reproduced Record at 19A–20A.
Although the Return to Work Evaluation completed by Dr. Blakley and dated October 21, 1985 was attached to the deposition of Fleming–Loriso and labeled as Exhibit No. 2, neither the referee nor the parties indicated that it was included within the claimant counsel's general objection to "the reports of Kathleen Flenner [Fleming–Loriso] with attachments". Further, a review of the record confirms that neither Defendant's Exhibit No. A nor B includes the Return to Work Evaluation.

supply side of the fur business either as an off-site employee or as an independent fur dealer. Deposition of Mr. Heasley at 15–18, 22, 25–26, 61–66, Reproduced Record (R.R.) at 63A–66A, 70A, 73A–74A, 109A–110A. He testified that he looked for employees during each fur season and that he sought to increase his business volume by training and setting up dealers. *Id.* at 54, 61, R.R. at 102A, 109A. He also testified that other McCreary employees either presently worked as dealers or had done so in the past. *Id.* at 8–10, R.R. at 56A–58A.

He further testified that the position afforded an opportunity to relieve his wife of her present business duties. *Id.* at 49, R.R. at 97A. He testified that he informed the claimant that the position's duties included retail sales of trapping supplies, market research and development, office record-keeping and Telex machine operation, as well as training. *Id.* at 21–23, R.R. at 69A–71A. Finally, he testified that the job would be available as long as the employment relationship was compatible and the claimant made a good faith effort at performing the 40–hour per week job. *Id.* at 32–37, R.R. at 80A–85A.

In the context of the recitation of Heasley's prior business relationships with McCreary employees, the exposition of Heasley's interest in establishing the position, and the delineation of the position's hours and duties, the fact that the position was predicated on the employer's financing offer does not evidence bad faith precluding the grant of the suspension of benefits. Accordingly, we affirm.

PELLEGRINI, J., concurs in result only.

## ORDER

AND NOW, this the 17th day of September, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.