Richard CRISMAN, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (CYTEMP SPECIALTY STEEL), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 18, 1998.
Decided Nov. 10, 1999.

Richard T. Ruth, Erie, for petitioner.

Paul R. Marks, Warrendale, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

FLAHERTY, Judge.

Richard Crisman (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board, which affirmed a decision of a Workers' Compensation Judge (WCJ) granting the Modification Petition of Cytemp Specialty Steel (Employer).  We affirm.

On May 7, 1993, Claimant sustained a work related neck and back injury while working as a mill hand for Employer. Claimant continued to perform his regular job duties until September 23, 1993, when Claimant ceased working and collected

workers' compensation benefits pursuant to a Notice of Compensation Payable.

On December 28, 1993, Claimant was offered and returned to work in an alternative light-duty position of "Fire Watch" with Employer two hours per day, ten hours per week.[1] On March 14, 1994, Employer filed a Petition to Modify Compensation Benefits (Modification Petition), based upon an opinion by an Independent Medical Examiner (IME) who approved Claimant for the same position of Fire Watch for eight hours per day, forty hours per week.[2] Employer's Modification Petition alleged that as of March 7, 1994, Claimant was capable of performing modified work made available to him, but Claimant refused the position in bad faith. Claimant denied the averments of the Modification Petition.

After hearings, testimony and receiving evidence, WCJ accepted the testimony of the IME, Dr. Smith, that Claimant was physically capable of returning to the light-duty Fire Watch position on a full-time basis. WCJ found that Claimant was offered the job, that it was available to Claimant and that at no time did Claimant accept the full-time, light-duty job.[3] WCJ also found Claimant's testimony that the Fire Watch position was "demeaning" was not a sufficient reason to refuse the position and did not overcome Claimant's physical capacity to perform the light-duty Fire Watch position on a full-time basis.

WCJ granted the Modification Petition, finding that a full-time Fire Watch position offered to Claimant was within his work restrictions and that Claimant had not in good faith returned to the position which was physically within his capabilities. Claimant appealed to the Board, which affirmed. This appeal followed.

■ Claimant presents two arguments before the Court, however, because Claimant's question invoking the Americans with Disabilities Act.[4] is presented for the first time to this Court, our scope of review precludes our consideration of this issue, since the issue was not presented or preserved for appeal before the Board.[5]

Claimant's sole remaining argument is that the job offered by Employer to Claim-

---

1. The Fire Watch position entailed sitting in a trailer and preventing or reporting the possibility of fires.

2. Claimant was notified of the availability of the position by letter dated February 28, 1994, indicating that he had been released to full-time, light-duty work beginning March 7, 1994. The Claimant did not accept this full-time, light-duty position at any time.

3. WCJ rejected the testimony of Claimant's physician, Dr. Macielak, noting that Claimant's physician agreed that the Fire Watch position was within Claimant's physical restrictions.

4. The Act of July 26, 1990, P.L. 101–336, 104 Stat. 327, popularly referred to as the "Americans with Disabilities Act", which appears generally as Chapter 126 of Title 42 of the United States Code, 42 U.S.C. §§ 12101 – 12213.

5. Appellate review in workers' compensation matters where the Board takes no additional evidence is limited to determining whether there is substantial evidence to support necessary findings of fact, whether there is a violation of constitutional rights, or whether an error of law was committed. *ANR Freight System v. Workers' Compensation Appeal Board (Bursick)*, 728 A.2d 1015 (1999 ).

In addition, a review of the certified record indicates that the only two issues Claimant presented to the Board on appeal were 1) that WCJ erred by not specifically finding the position offered to Claimant was "no duty;" and 2) WCJ appeared to conclude that a "no duty" position is "available" within Claimant's medical restrictions and is not a "sham" to circumvent benefits. (C.R. at 20).

Consequently, because the Claimant's question to this Court regarding the application of the American's with Disabilities Act was not raised in Claimant's appeal to the Board, it was not preserved for appeal, and is, therefore, waived and will not be considered. "The mere filing of an appeal [to the Board] does not preserve issues which are not specifically raised." *WCI, Inc. v. Workers' Compensation Appeal Board (Graeff)*, 711 A.2d 543 (Pa.Cmwlth.1998); *citing Fiorentino v. Workmen's Compensation Appeal Board (Concrete*

ant was merely to "sit and act as a human smoke alarm," and is not productive employment. Therefore, under, *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), such a job referral to a "no-duty" position was not a "good faith effort" by Employer to return Claimant to work.

The Claimant alleges because the Claimant was released to the light-duty position full-time by the *IME* instead of his treating physician that this Court's holding in *Ryan v. Workmen's Compensation Appeal Board (Port Erie Plastics)*, 162 Pa. Cmwlth. 411, 639 A.2d 866 (1994)(holding that although a "no duty" position was irregular, it was still "available" within the meaning of *Kachinski* ) is not applicable.[6] We disagree.

The WCJ did not accept as credible the testimony of the Claimant's physician, and therefore, the only competent medical evidence of record is the credible testimony of the IME, who released the Claimant not only to full-time, light-duty work, but spe-

cifically to the full-time, light-duty position of "Fire Watch", which position the Claimant refused.[7]

Under *Kachinski*, if the Employer presents medical evidence found credible and competent by the WCJ that the claimant is capable of performing an available job, the Employer is entitled to a modification of benefits. It is within the purview of the WCJ to determine, based upon the medical evidence submitted, if the Claimant is capable of performing the job.[8]

In this instance, Employer offered an available job within Claimant's physical capabilities, as determined by WCJ, and Claimant's refusal to accept the position because the Claimant's perception is that the position is "demeaning" or "no-duty" does not constitute a "good-faith" refusal by the Claimant under *Kachinski*. *See Ryan.*

Employer's Modification Petition was properly granted and accordingly, we affirm the Board.

---

*Industries, Inc.)*, 131 Pa.Cmwlth. 658, 571 A.2d 554, 556 (1990).

6. In *Kachinski*, our Supreme Court set forth the following test regarding an employer's burden where an employee has returned to the workplace following a work-related injury:

1) The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition;
2) The employer must then produce evidence of a referral to a then open job, which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc;
3) The claimant must then demonstrate that he has in good faith followed through on the job referral;
4) If the referral fails to result in a job, then claimant's benefits should continue.

7. Claimant contends that the record is undisputed that there were no duties required of Claimant while he performed the Fire Watch position for ten hours per week from December 6, 1993, "except to prevent or report the

possibility of fires," which Claimant then admits *is* a duty and responsibility.

8. If the modification petition is predicated upon an employer's assertion that it offered a medically approved position available to the claimant, then the employer is not required to produce medical evidence of a change in condition. Rather, the employer need only establish that the proposed alternative work for the claimant is within his or her physical capabilities and "actually available," i.e., the proffered job receives medical clearance and the claimant is advised of that clearance while the job is still open. *H.M. Stauffer & Sons, Inc. v. Workmen's Compensation Appeal Board (Davis)*, 687 A.2d 869 (Pa.Cmwlth.1996), *citing Ryan; York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Cmwlth. 75, 591 A.2d 762 (1991).

To establish a job is "actually available," an employer need only produce medical evidence describing the claimant's capabilities, vocational evidence classifying the type of available job and a basic job description. *H.M. Stauffer citing Kachinski.* "It is within the WCJ's province as fact finder to assess these duties and restrictions and determine if Claimant could perform the jobs. Expert testimony linking the job duties and medical

ORDER

AND NOW, November 10, 1999, in the above captioned matter, the April 11, 1997 Order of the Workers' Compensation Appeal Board at No. A95–1449 is hereby AFFIRMED.

FRIEDMAN, Judge dissenting.

I must respectfully dissent because, unlike the majority, I agree with Richard Crisman (Claimant) that Cytemp Specialty Steel's (Employer) offer of a full-time position as "Fire Watch" did not constitute a good faith effort to return Claimant to productive employment justifying a modification of workers' compensation benefits under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).

In concluding otherwise, the majority relies on *Ryan v. Workmen's Compensation Appeal Board (Port Erie Plastics, Inc.)*, 162 Pa.Cmwlth. 411, 639 A.2d 866 (1994), in which this court held that a "no work position", although "irregular," was, nonetheless, still "available" within the meaning of *Kachinski*. Reluctantly, I must acknowledge *Ryan*'s holding; however, for the following reasons, I believe that *Ryan* was incorrectly decided and is contrary to our supreme court's opinion in *Kachinski*.

In *Ryan*, the employer made a "no work position" available to the claimant. The position required the claimant to report to the workplace and simply put in time sitting or standing in a designated spot, doing no work whatsoever, for which the employer would pay the claimant an amount equal to her pre-injury wage. The referee[1] concluded that the "no work position" was not a good faith offer of suitable and available work and, thus, declined to grant the employer a suspension of benefits based on the claimant's refusal to report to such a position. However, the Workmen's Compensation Appeal Board (WCAB) determined that the referee's conclusion was error and reversed. On appeal, this court affirmed the WCAB. In doing so, we simply quoted the four-pronged procedure set forth by our supreme court in *Kachinski* to govern the return to work of injured employees. Then, without further discussion of the *Kachinski* requirements, we determined that the case was controlled by *Bennett v. Workmen's Compensation Appeal Board (McCreary Tire)*, 150 Pa.Cmwlth. 525, 616 A.2d 75 (1992), based on a perceived analogy between the situation in *Ryan* and that in *Bennett*. I believe that the analysis used in *Ryan* was flawed.

First, I note that a mere recitation of the four prongs of *Kachinski*, without further elaboration, fails to give a clear picture of what is required for an employer to establish that a job is actually available to a claimant or that a job referral was made in good faith. Indeed, our supreme court saw the need to offer further guidance on the matter and, immediately after setting down the four procedural steps,[2] explained:

restrictions is not required." *H.M. Stauffer* at 871.

[1.] Prior to 1993, workers' compensation judges were called referees.

[2.] In *Kachinski*, our supreme court set forth the following four-pronged procedure for determining whether a modification of benefits is appropriate:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue. *Id.* at 252, 532 A.2d at 380. It is apparent that these procedural steps, by themselves, offer only a partial insight into what constitutes "available" employment under *Kachinski*. For a more complete understanding of what our supreme court intended, we must look to the court's clarification and refine-

Obviously, the viability of this system depends on the good faith of the participants. The referrals by the employer must be tailored to the claimant's abilities and be made in a *good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation.* By the same token, employees must make a good faith effort to return to the work force when they are able, and their benefits can be modified for failure to follow up on referrals or for willfully sabotaging referrals. If an employee refuses a *valid* job offer his benefits can also be modified if it is found he had no basis upon which to do so.

*Kachinski,* 516 Pa. at 252, 532 A.2d at 380 (emphasis added) (citations omitted). Despite its relevance to the issue in *Ryan,* this court failed to mention this additional language from *Kachinski* and, thus, never considered whether the "no work position" offered by the employer in *Ryan* represented "a good faith attempt to return an injured employee to productive employment." Instead, the majority in *Ryan* simply relied on *Bennett,*[3] stating:

> In Bennett, this Court held that a work position offered to the claimant by a third party, which the employer agreed to finance, was suitable and available work for purposes of the Act.[4] Over [c]laimant's argument that the offered position was a "sham" position created to avoid paying compensation, this Court stated the following:
>
>> While we acknowledge that the financing arrangement is irregular, we cannot conclude that the position was not "available" within the meaning of Kachinski and its progeny.
>>
>> Bennett, [150 Pa.Cmwlth. 525] 616 A.2d at 78 (1992).
>
> Similarly, here, although the "no work position" offered by [e]mployer was irregular, we cannot conclude that said position was not "available" within the meaning of Kachinski.

*Ryan,* 639 A.2d at 868. Unlike the majority in *Ryan,* I fail to see the similarity between *Bennett* and *Ryan.*

In *Bennett,* although the financing arrangement was irregular, the job itself was genuine. Indeed, in *Bennett,* we stressed the fact that the prospective employer testified as to the position's duties and training possibilities, as well as the employer's expressed need to have someone in the

---

ment of the term "available employment," found elsewhere in the opinion.

This court, too, has provided direction for determining whether particular employment is actually available to an injured employee. With respect to the second prong of *Kachinski,* this court, in *Titusville Hospital v. Workmen's Compensation Appeal Board (Ward),* 122 Pa.Cmwlth. 619, 552 A.2d 365 (1989), stated that factors to be considered in determining whether work is available to claimant or within claimant's reach include claimant's physical limitation, age, intellectual capacity, prior work experience, and other relevant considerations, such as the claimant's place of residence. Ultimately, our inquiry is whether a specific job is appropriate for a reasonable person in the position of the claimant. *Goodwill Industries of Pittsburgh v. Workmen's Compensation Appeal Board (Friend),* 158 Pa.Cmwlth. 292, 631 A.2d 794 (1993). Of course, as part of any consideration to determine whether a particular job is actually available to the claimant, we must decide whether the job itself represents the employer's good faith offer of productive employment.

3. In *Bennett,* an injured employee released to perform restricted light duty work refused an offer to work at a fur shop because he deemed it unsuitable. The referee, affirmed by the WCAB, determined that the employer was entitled to a suspension of benefits based on the claimant's refusal to accept a valid job offer at pre-injury wages. On appeal to this court, the claimant argued that, because the job offer was prompted by the employer's agreement to finance the position at wages equal to the claimant's pre-injury wage, the position was a "sham" created by the employer to avoid paying compensation. We disagreed. Although we acknowledged that the financing arrangement was irregular, we stated that we could not conclude that the position was not available within the meaning of *Kachinski.*

4. The Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

position. We stated that, *in that context,* the fact that the position was predicated on the employer's financing offer does not evidence bad faith precluding the grant of the suspension of benefits. The situation in *Ryan* was very different. In *Ryan,* as in the present case, it was not the means of financing the job that was irregular, but the "job" itself which was irregular because, in fact, it was not a real job at all, but, rather, a "sham" created to avoid paying benefits to the claimant. Because I believe that the majority in *Ryan* mistakenly relied on *Bennett* to reach an incorrect result, I also believe that the majority here improperly relies on *Ryan* to govern the outcome in this case.

I wish to emphasize that I agree that a claimant's mere expression of dissatisfaction with a particular job as demeaning or unsuitable does not excuse him from applying for a proffered position in good faith. *See, e.g., Hendry v. Workmen's Compensation Appeal Board (Miller & Norford, Inc.),* 133 Pa.Cmwlth. 28, 577 A.2d 933 (1990). However, our supreme court clearly contemplated that both employees and employers act in good faith with respect to an injured employee's return to work. This means that an employee may not simply refuse alternative employment that would justify a reduction in benefits any time he considers the proposed job unsuitable; it also means that, to warrant a reduction in benefits, an employer must refer employees to a job that represents productive employment rather than invent a humiliating and meaningless no work position "to avoid paying compensation". *Kachinski,* 516 Pa. at 252, 532 A.2d at 380. Although a claimant's personal feelings about a particular job are irrelevant, *State Products Corp. v. Workmen's Compensation Appeal Board,* 61 Pa. Cmwlth. 366, 434 A.2d 207 (1981), a claim-

ant, at the very least, has a right to expect referral to genuine employment. To hold otherwise would make a mockery of the workers' compensation scheme.

Having stated that a claimant may not decide for himself when a job is to his liking and refuse to apply for those positions he feels are demeaning, I point out that this is not what happened in the present case. Here, Claimant did not refuse to apply for the position of "Fire Watch;" in fact, Claimant previously held that position for ten hours a week. Recognizing what it was like to do this "work" for two hours a day, Claimant knew that performing this same "work" for eight hours a day was nothing more than "sham" employment, requiring no duties other than to sit in one place all day, every day, and look for fires which never come.[5] Claimant here, having "worked" at the "Fire Watch" position on a part-time basis, was familiar with the lack of job duties. He did not refuse to accept the position on a full-time basis because of low pay or status; rather, he objected because, in fact, it was not a job at all. Because I do not believe that this no work position is a good faith offer of suitable and available work, I would hold that Employer had failed to meet its burden under *Kachinski* and, accordingly, I would reverse the grant of Employer's Modification Petition based on Claimant's refusal to accept this position.

Judge McGINLEY joins in this dissent.

---

5. The majority notes Claimant's admission that preventing or reporting the possibility of fires is a duty and responsibility. (Majority op. at 769 n. 7.) However, I do not believe that Employer can transform a "no work" job into productive employment simply by calling it a "Fire Watch" position. As Claimant points out, anyone working for Employer shared the duty to prevent or report the possibility of fire, and Claimant, sitting stationary in a trailer for the entire day, acted as nothing more than a human smoke alarm.