**Michael SLADISKY, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ALLEGHENY LUDLUM CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.

Decided May 15, 2012.

---

Daniel K. Bricmont, Pittsburgh, for petitioner.

Lawrence J. Baldasare, Pittsburgh, for respondent Allegheny Ludlum Corporation.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION by Judge LEAVITT.[1]

■ Michael Sladisky (Claimant) petitions for review of an adjudication of the

---

1. The case was reassigned to this author on February 14, 2012. This matter was argued before a panel consisting of Judge Leavitt, Judge Butler and Senior Judge Friedman.

Workers' Compensation Appeal Board (Board) denying his reinstatement petition. In doing so, the Board reversed the Workers' Compensation Judge's (WCJ) decision that Claimant was entitled to a reinstatement of total disability benefits because his light-duty job, funded by Allegheny Ludlum Corporation (Employer) with another employer, had ended.[2] The Board held that Claimant had received the maximum 500 weeks of partial disability benefits for his work injury and was not entitled to an automatic reinstatement of total disability simply because his light-duty job ended. Rather, Claimant had to prove that his physical condition had worsened, rendering him incapable of doing the light-duty job he held when he exhausted his partial disability benefits. This is the same burden imposed on all claimants who have exhausted their 500 weeks of partial disability benefits and seek a reinstatement to total disability. Discerning no error in the Board's refusal to create an exception from this general rule for those claimants working in a light-duty position funded by the employer, we affirm.

The facts of this case are not in dispute. Claimant broke his right leg and left ankle at work in March 1994. Employer accepted liability for the injury by issuing a Notice of Compensation Payable. Initially, Claimant was totally disabled by his work injury, but in 1998 he returned to a light-duty job in Employer's facility. The parties executed a series of supplemental agreements between October 1998 and May 2001, which adjusted the amount of his partial disability payments as the compensation for his modified-duty position with Employer changed. On May 16, 2001, Employer reinstated Claimant to total disability benefits when his 1994 work injury again disabled him.

On August 1, 2003, Claimant retired and began collecting a pension from Employer. Employer's Brief at 2. Claimant ceased to be a member of the union when he retired. Accordingly, Employer could not employ Claimant in any light-duty job in its facility.

Thereafter, Employer referred Claimant to Employment Alternatives, Inc. to find Claimant a light-duty job that met his physical limitations. Employer committed to fund the light-duty job. On August 8, 2005, Claimant was placed in a full-time, light-duty job with the Easter Seals Society of Western Pennsylvania.[3] When Claimant began his job at Easter Seals, Employer modified his total disability to partial at a weekly rate of $263.78, based upon his earnings from the Easter Seals job. Claimant did not challenge the modification. He worked for Easter Seals for over three years, collecting a salary and partial disability benefits.

On November 26, 2008, Claimant was laid off from the Easter Seals job. By that point, Claimant had received 500 weeks of partial disability benefits, which is the maximum allowable under Section 306(b)(1) of the Workers' Compensation

Because of the conclusion of Judge Butler's service, the case was submitted on briefs to Judge Leadbetter for consideration as a member of the panel.

2. In funded employment, also called subsidized employment, the claimant works for a new employer but the time-of-injury employer pays the claimant's salary and its insurer pays any workers' compensation benefits that are due.

3. Employer had to refer Claimant to a specific job and could not establish Claimant's earning power by doing a labor market survey because Claimant was injured prior to the June 1996 statutory amendment providing for labor market surveys. *Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.)*, 603 Pa. 74, 82 n. 8, 981 A.2d 1288, 1292 n. 8 (2009).

Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(1).[4] Claimant then filed a petition seeking reinstatement of his total disability benefits as of November 29, 2008. The matter was assigned to a WCJ for a hearing.

The parties submitted a stipulation of facts, and Claimant testified live before the WCJ. Claimant explained that his Easter Seals job required watching for and announcing the arrival of buses, setting up for lunch and doing paperwork for the organization. On November 26, 2008, the head of Employment Alternatives told Claimant that his Easter Seals job was being terminated because Employer would no longer fund the position. Claimant testified that he would have continued working at Easter Seals had he not been laid off.

The WCJ granted Claimant's reinstatement petition. A claimant seeking a reinstatement of total disability benefits after exhausting his 500 weeks of partial disability benefits must prove that he can no longer physically do the job he had when the 500 weeks expired. The WCJ found that Claimant could not meet that burden because he admitted that he was physically able to do the Easter Seals job. However, the WCJ concluded there should be an exception for Claimant because he was working in a funded employment position. The WCJ reasoned that light-duty jobs are tailored to the claimant's restrictions and do not show that the claimant "has an

earning capacity on the open labor market." WCJ Decision, August 19, 2009, at 3; Finding of Fact 6. Accordingly, the WCJ applied the burden of proof applicable to a claimant whose partial disability benefits have not reached the 500–week maximum. In that case, the claimant is automatically reinstated to total disability when his light-duty job ceases to be available.

█ Employer appealed, and the Board reversed. The Board held that the WCJ erred in creating an exception for a claimant working at a funded light-duty job when he reaches the 500–week maximum for partial disability. Instead, Claimant was required to satisfy the burden applicable to all claimants seeking reinstatement after exhausting their partial disability: he had to prove that his physical condition had worsened so that he could no longer do the Easter Seals job. Claimant failed to meet that burden and, thus, was not entitled to a reinstatement. Claimant now petitions for this Court's review.[5]

█ Claimant raises one issue for our consideration, namely, that the Board erred in reversing the WCJ's award of total disability benefits. Claimant contends that where a claimant has exhausted his 500 weeks of partial disability while working at a funded employment position, the claimant should be automatically returned to total disability when the employer stops funding the position. Claimant does not argue that his funded employ-

---

4. Section 306(b)(1) of the Act states, in relevant part, that partial disability benefits
 shall be paid during the period of such partial disability ... but for not more than five hundred weeks.
 77 P.S. § 512(1). Therefore, even if a claimant still cannot earn his pre-injury wage, he is not entitled to any more partial disability benefits after 500 weeks. *Palaschak v. Workers' Compensation Appeal Board (U.S. Airways)*, 35 A.3d 1242, 1248 n. 11 (Pa.Cmwlth.2012).

5. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

ment position at Easter Seals tolled the 500–week limit to partial disability. Had Employer continued to fund the Easter Seals position, Claimant acknowledges that his partial disability would have ended after 500 weeks. However, Claimant argues that whenever a funded position ends, either before or after 500 weeks of partial disability, the claimant is entitled to an automatic reinstatement of full disability.

■ There are different burdens of proof for reinstating total disability benefits, depending on whether the claimant has exhausted his 500 weeks of partial disability benefits. Prior to 500 weeks elapsing, a partially disabled claimant can reinstate to total disability benefits by showing that his earning power is once again adversely affected by his work injury, and he need not show his physical condition has worsened. *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 503–04, 640 A.2d 386, 392–93 (1994). Such a claimant is entitled to total disability benefits if he is laid off when the employer eliminates his light-duty job. *Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Laubach)*, 563 Pa. 313, 321–22, 760 A.2d 378, 383 (2000).

■■ A claimant faces a more difficult burden of proof after he has exhausted 500 weeks of partial disability benefits. In *Stanek v. Workers' Compensation Appeal Board (Greenwich Collieries)*, 562 Pa. 411, 756 A.2d 661 (2000), our Supreme Court held that

a post–500–week claimant must establish his total disability by precise and credible evidence of a more definite and specific nature than that required to obtain compensation initially or modification within the 500–week period.

*Stanek*, 562 Pa. at 425, 756 A.2d at 668. Specifically, the claimant must show "a worsening of [his] medical condition." *Id.*

Where a claimant has exhausted his 500–week partial disability and seeks reinstatement to total disability, he must prove

that *his increased, work-related impairment has precluded continuation of such light-duty employment.* The burden to prove the availability of employment consistent with the claimant's physical limitations will then shift to the employer.

*Id.* at 426, 756 A.2d at 669 (emphasis added). Simply, after exhaustion of partial disability, it is not enough to show that the light-duty job is no longer available. The claimant must show that he could no longer do the job because of an increased impairment.

Claimant admits that he cannot meet the *Stanek* burden of proof. However, Claimant argues for an establishment of an exception to the *Stanek* rule for those claimants working at funded employment. He believes this category of claimants should be automatically eligible for total disability benefits upon the elimination of their light-duty job. In support, Claimant cites *General Electric Company v. Workers' Compensation Appeal Board (Myers)*, 578 Pa. 94, 849 A.2d 1166 (2004) for the proposition that the Supreme Court looks with disfavor on funded employment.

Starting with that premise, i.e., that funded employment jobs are not favored, Claimant attacks the Easter Seals job as a mere "artifice" used by Employer to "manipulate" the Act to ensure that Claimant exhausted his 500 weeks of partial disability. Claimant's Brief at 13. Claimant also argues that Employer acted in bad faith by not trying to return Claimant to real, productive employment. For that reason, Employer should be required to pay Claimant total disability benefits until Employer refers Claimant in good faith to a light-duty job he is capable of doing.

Claimant believes no less is required under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987).[6]

Employer responds that the *General Electric* decision did not alter *Stanek's* holding. In fact, Employer believes that *General Electric* supports its position that funded employment jobs, tailored to a claimant's physical impairment, are a valid way to return claimants to work and reduce their total disability to partial. It does not matter whether the employer "funds" the position at its own facility or another facility having no relationship to employer's business.

We begin with a review of *General Electric,* which had nothing to do with a reinstatement to full disability after the claimant had exhausted his 500 weeks of partial disability. In *General Electric,* the employer sought to modify the claimant's disability benefits because he had refused a job with a telecommunications company that was to be funded by the time-of-injury employer. Our Supreme Court held that the funded employment job warranted a modification of benefits from total to partial disability, but limited the duration of the modification to the 90–day period of time that the job lasted. The Court did *not* hold that funded employment with another employer is not a valid job for purposes of authorizing a modification of benefits. It did not suggest that an employer who funds a job with another employer acts in bad faith. *See also Bennett v. Workmen's Compensation Appeal Board (McCreary Tire & Rubber Company),* 150 Pa.Cmwlth. 525, 616 A.2d 75, 78–79 (1992) (holding that a job funded by the original employer with a different employer was an available position for purposes of *Kachinski*).

■ Simply, there is nothing untoward about funded employment. It is a legitimate way to bring an injured claimant back to work and reduce his disability from total to partial.

Instead of adhering to the established principle that funded employment is acceptable under *Kachinski,* Claimant suggests that his earning power must be shown in the "labor market" by locating a job for him that already exists when a funded job ends. Claimant's Brief at 12. There is no such requirement in the Act or in case law precedent. Employers routinely give claimants light-duty jobs within their own facilities that are tailored to the claimant's physical restrictions. There may be no other way to return a person to work. Under Claimant's rationale, creating a job at an employer's own facility to meet a claimant's restrictions is also "manipulating" the Act.

---

6. In *Kachinski,* our Supreme Court set out a four-part test that must be met in order to obtain a modification of benefits:
 1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
 2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.

 3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
 4. If the referral fails to result in a job then claimant's benefits should continue. *Kachinski,* 516 Pa. at 252, 532 A.2d at 380. An employer must make a job referral in good faith in order to meet its burden of proof under *Kachinski. Roth v. Workers' Compensation Appeal Board (Amore Management Company and Penn National Insurance),* 727 A.2d 1185, 1187 (Pa.Cmwlth.1999).

By injecting *Kachinski* into this case, Claimant has conflated the distinct concepts of modification based on job availability and reinstatement to total disability. *General Electric* and *Kachinski* involved an employer's modification petition, not a claimant's reinstatement petition. If Claimant believed that the Easter Seals job was not a real job or that Employer was not making a good faith effort to return him to productive employment, it was incumbent upon Claimant to challenge the job when it was offered in 2005.

The Notification of Modification sent to Claimant by Employer advised him of the following:

> If you do not agree with this action, you should challenge it. . . . *If you do not challenge this action* within twenty (20) days of the date you receive this Notice, *you will be deemed to have admitted that you agree with the action taken on this form.* In that case, this Notice will have the same binding effect as a fully executed Supplemental Agreement for the suspension or modification of benefits.

Reproduced Record at 3a (emphasis added). Claimant did not "challenge this action," *i.e.,* the modification.

 Claimant could have refused to report to the Easter Seals job and forced Employer to file a modification petition. In that case, Employer would have had to prove that the Easter Seals job was within Claimant's capabilities and offered in good faith. Alternatively, Claimant could have filed a challenge petition, as instructed by the explicit directions in the Notification of Modification. He chose not to do so. The Notification of Modification now has the same effect as a supplemental agreement for a modification of benefits. The time for challenging the Easter Seals job has long passed. A claimant may not accept a light-duty job, perform it for years, and then attack its validity in the form of a reinstatement petition. As explained by our Supreme Court in *Stanek,* "a post–500–week claim may not be used to overcome the effect of the statutory limit on eligibility for partial disability benefits." *Stanek,* 562 Pa. at 424–25, 756 A.2d at 668.

The Board properly overruled the WCJ's *Stanek* exception. To grant such an exception would mean that Claimant would receive a benefit that claimants working a light-duty job with their own employer would not receive. All claimants working at a funded light-duty position would be automatically returned to full disability when funding stops. This would be true even if the claimant is no longer collecting partial disability because he has exceeded the 500–week limit. By contrast, claimants working at a light-duty job with their own employer would not be automatically returned to full disability when their light-duty job ended. They would have to show a change in their physical condition in order to be returned to full disability, as was established in *Stanek.* There is no provision in the Act, nor is there any policy reason, to authorize this disparate treatment.

In sum, it was Claimant's burden to prove the elements necessary for a reinstatement to total disability after he collected 500 weeks of partial disability. Under *Stanek,* Claimant had to prove that his physical condition worsened so that he could no longer perform the Easter Seals job. The record shows the opposite. Claimant testified that he could have continued to do the job.

Accordingly, we affirm the Board's denial of Claimant's reinstatement petition.

### ORDER

AND NOW, this 15th day of May, 2012, the order of the Workers' Compensation

Appeal Board dated December 20, 2010, in the above captioned matter is hereby AFFIRMED.

DISSENTING OPINION by Senior Judge FRIEDMAN.

I respectfully dissent from the majority's decision to affirm the order of the Workers' Compensation Appeal Board (WCAB) denying Michael Sladisky's (Claimant) reinstatement petition. I do not agree that Claimant, following the expiration of the 500–week period of partial disability benefits exhausted during funded light-duty employment, must prove his physical condition has worsened in order to have his total disability benefits reinstated.

For purposes of workers' compensation, "disability is the loss of earning power attributable to the work-related injury." *Diehl v. Workers' Compensation Appeal Board (I.A.Construction)*, 607 Pa. 254, 277, 5 A.3d 230, 244 (2010) (internal quotations omitted). Section 306(a) of the Workers' Compensation Act (Act),[1] requires the payment of total disability benefits for the duration of total disability. Pursuant to section 306(b) of the Act, 77 P.S. § 512, partial disability benefits are available during any period of such disability, "but for not more than five hundred weeks."[2] Section 413(a) of the Act, 77 P.S. § 772, authorizes a WCJ to reinstate benefits at any time upon proof that a claimant's disability (*i.e.*, loss of earning power) has increased. A claimant seeking to reinstate following a suspension[3] must prove that:

(1) through no fault of his or her own, the claimant's disability, i.e., earning power, is again adversely affected by the work-related injury, and (2) the disability which gave rise to the original claim, in fact, continues. There is a presumption that the continuing injury is, however, the same injury that caused the original disability. Once a claimant testifies that his or her prior work-related injury continues, the burden shifts to the employer to prove the contrary.

*City of Harrisburg v. Workers' Compensation Appeal Board (Palmer)*, 877 A.2d 555, 559 (Pa.Cmwlth.2005) (internal citations omitted).

In this case, it is undisputed that the medical restrictions resulting from Claimant's work injury are permanent and, therefore, his disability continues. Employer subsidized a job with another employer, whereby Claimant performed a light-duty position tailor-made for him. Claimant was laid off from that position, through no fault of his own, when his 500 weeks of partial disability expired and Employer ceased subsidizing the light-duty position.

Had Claimant sought reinstatement prior to exhausting his partial disability benefits, Claimant would have met his burden, and he would have been entitled to a reinstatement of total disability benefits in the absence of proof by Employer of work availability. *See Bethlehem Steel Corporation v. Workers' Compensation Appeal Board (Laubach)*, 563 Pa. 313, 321–322, 760 A.2d 378, 383 (2000) (plurality) (rein-

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.

2. For injuries, as in this case, occurring before June 24, 1996, the extent of partial disability is measured by the loss of earning power. As of June 24, 1996, however, the definition of earning power relative to partial

disability was modified by the amendments to the Act.

3. An award of partial disability benefits is equivalent to a partial suspension of benefits. *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 503, 640 A.2d 386, 392 (1994).

stating claimant to total disability benefits where he had been working a modified job created by employer to reduce its obligation to pay total disability benefits when the job was eliminated as part of employer's layoffs). But having sought reinstatement after exhausting his partial disability benefits, Claimant now has a higher burden under which he must establish total disability. *See Stanek v. Workers' Compensation Appeal Board (Greenwich Collieries)*, 562 Pa. 411, 425, 756 A.2d 661, 668 (2000) (noting that there is a higher burden under which "a post–500–week claimant must establish his total disability . . . than that required to obtain compensation initially or modification within the 500–week period").

In order for total disability benefits to be reinstated after exhausting partial disability benefits, the Pennsylvania Supreme Court has required that "the claimant establish, by clear and precise evidence, that his increased, work-related impairment has precluded continuation of such light-duty employment." *Id.* at 426, 756 A.2d at 669. Specifically, the claimant must establish that: (1) his disability has increased to the point that he "has no ability to generate earnings (or a 'zero earning capacity')," and (2) his medical condition has worsened.[4] *Id.* at 425, 756 A.2d at 668. It is insufficient for a claimant to show that his work-related injuries continue and that his light-duty job is no longer available to him. *See id.*

In this case, the WCJ did not believe the standard espoused in *Stanek* should be applied in funded employment situations. The WCJ noted that, in her experience,

employers pursue funded employment where an injured worker's physical restrictions preclude employment in the open market. (WCJ's Findings of Fact, No. 6.) The employer pays an outside employer to design a job tailored to the injured worker's restrictions. (*Id.*) Citing *General Electric Company v. Workers' Compensation Appeal Board (Myers)*, 578 Pa. 94, 106, 849 A.2d 1166, 1173 (2004) (plurality),[5] the WCJ concluded that "[t]he provision of subsidized employment outside the labor market that is only available as long as the [Employer is] willing to provide the subsidy cannot be used to establish that [Claimant] has an earning capacity on the open labor market despite his injury." (WCJ's Conclusions of Law, No. 3.)

I agree with the reasoning of the WCJ. Where, as here, an employer ceases to fund the light-duty work once its liability for a claimant's partial disability benefits has expired, a claimant should not be required to demonstrate a worsening of his physical condition preventing him from performing even the light-duty employment. Otherwise, it encourages employers to set up artificial jobs for purposes of running the clock on a claimant's partial disability benefits, thereby ending its obligation to pay benefits to which the claimant would have otherwise been entitled, which is exactly what occurred here.

Claimant was not recovered from his work injury and was unable to perform his time-of-injury job, so Employer would have been obligated to pay Claimant total disability payments between August 2005 and November 2008 and thereafter. Employer funded the light-duty job with the

---

4. Once the claimant meets his burden, "[t]he burden to prove the availability of employment consistent with the claimant's physical limitations will then shift to the employer." *Stanek*, 562 Pa. at 426, 756 A.2d at 669.

5. There, the Supreme Court held that the WCJ did not abuse her discretion in considering the subsidized nature of the proffered job and the effect of that funding on the availability of that job. *General Electric*, 578 Pa. at 106, 849 A.2d at 1173.

Easter Seals Society of Western Pennsylvania (Easter Seals).[6] When Claimant began his job at Easter Seals, Employer modified his total disability to partial disability. Claimant worked for Easter Seals for over three years, collecting a salary and partial disability benefits. This employment does not accurately reflect Claimant's ability to secure a job in the actual labor market. Employer clearly pursued funded employment to terminate its obligation to pay disability benefits to Claimant.

The majority reasons that, if Claimant believed the Easter Seals job was not a real job or that Employer was not making a good faith effort to return him to productive employment, Claimant should have challenged the funded position when it was offered to him in 2005. Hindsight is 20/20. Had Claimant known that Employer would cease funding the light-duty employment once Claimant exhausted his 500-weeks of partial disability, in all likelihood, Claimant would have challenged the offer of subsidized employment. Instead, Claimant naively accepted the position and worked in this light-duty capacity until Employer ceased funding the position. Claimant is now without funded employment and without disability benefits because he cannot prove that his condition has worsened. Claimant should not be penalized for a good faith effort to return to the labor market to a job he was capable of performing.

Claimant's burden should be altered by the fact that the last job Claimant was deemed capable of performing was funded employment, rather than a job available to Claimant on the open market. The major-

ity's position permits, if not encourages, employers to use funded employment to exhaust partial disability payments. Such a position is contrary to the humanitarian purpose of the Act.

For these reasons, I find it unconscionable to count funded employment towards a claimant's 500-week limitation on partial disability benefits. I believe claimants should be automatically eligible for total disability benefits upon the elimination of their funded light-duty job. Therefore, I would reverse the order of the WCAB.

---

6. Employer had to refer Claimant to a specific job and could not establish Claimant's earning power by doing a labor market survey because Claimant was injured prior to the June 1996 statutory amendment providing for labor market surveys. *See Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.)*, 603 Pa. 74, 82 n. 8, 981 A.2d 1288, 1292 n. 8 (2009).