640 A.2d 386

**Thomas DILLON, Appellant,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (GREENWICH COLLIERIES), Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1993.

Decided April 20, 1994.

Alexander J. Pentecost, Amiel B. Caramanna, Jr. and Elizabeth A. Gebhardt, Pittsburgh, for appellant.

Robert G. Rose and James C. Munro, II, Johnstown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

The narrow question in this case arising under the Workmen's Compensation Act is whether the appellant met his burden of proof with respect to his petition seeking to modify an award of compensation for partial disability to one for total disability. To answer this question, however, we must examine the broader issue of what elements make up that burden of proof.

Thomas Dillon suffered a lower back strain while working for Greenwich Collieries on September 13, 1976. Compensation for total disability was paid pursuant to a Notice of Compensation Payable issued September 30, 1976. These

benefits were terminated as of May 30, 1978, when Dillon executed a Final Receipt. Dillon received compensation again pursuant to a Supplemental Agreement for a brief period from August 30 to September 11, 1978.

It appears that on November 15, 1978, Dillon suffered another injury, and received compensation for the period through January 21, 1979, when he returned to work at wages equal to or greater than his pre-injury wages. On the day after he returned to work, however (January 22, 1979), Dillon suffered a recurrence of the original back injury. He filed a claim petition, which was later amended to be treated as a reinstatement petition.

Hearing was held on June 20, 1980, and on March 4, 1981, the referee awarded compensation for partial disability, consistent with the stipulation of the parties that there were jobs available of a light and sedentary nature that Dillon could perform given his physical limitations. Benefits were set at a weekly rate of $135.58, being sixty-six and two-thirds per cent of the difference ($203.38) between Dillon's average weekly wage ($319.38) and the wage for a forty hour week at the then-current federal minimum wage of $2.90 per hour ($116).

Dillon continued receiving compensation for partial disability through July of 1982, when he filed a petition for review asserting that as of January 15, 1982, he had become totally disabled. At a hearing on August 3, 1983, this was amended to a petition for modification. The referee received the deposition of Dillon's physician, who indicated that as of the date of examination, January 15, 1982, Dillon was unable to perform the work he had been performing when injured in 1976. He suggested that further vocational rehabilitation testing would be required to determine whether Dillon could engage in any type of selective or restricted duties. Dillon testified about his condition, and stated that while he was willing to try some type of light work, he had searched for such work and found none available.

Greenwich argued that the petition was an improper attempt to attack the unappealed March 4, 1981, award of

compensation for partial disability. It also argued that the evidence was insufficient to support the claim for modification, since the physician's testimony did not indicate a change in Dillon's condition from the time of the March 4 award.

On February 6, 1984, the referee ruled in favor of Dillon, and ordered the payment of compensation for total disability as of January 15, 1982. On appeal, the Workmen's Compensation Appeal Board reversed and remanded, finding that the referee had improperly closed the record and decided the case without receiving a physician's deposition that Greenwich had sought to introduce.

After receiving the deposition, the referee again granted the modification petition, making the following relevant findings of fact:

9. Claimant has not been employed at all since he last worked for the defendant during January, 1979.

10. Prior to Referee Moraca's decision dated March 4, 1981, the parties agreed by stipulation that the defendant could show that work was available to the claimant that he could perform within the limitations imposed on him by his partial disability. No evidence of such work availability was submitted by the defendant prior to Referee Moraca's decision, nor has any such evidence been submitted since that decision.

11. Since Referee Moraca's decision the claimant has attempted to find employment but has been unable to do so.

12. Claimant has not shown that there has been any change in his compensable injury since Referee Moraca's decision.

13. Claimant has remained unable to return to his regular work for the defendant from January, 1979 through the present time.

14. This present Referee accepts the testimony of Dr. Vanderschilden and finds as a fact that the claimant is able to perform sedentary work, within the limits stated by Dr. Vanderschilden.

The referee also made the following pertinent conclusions of law:

2. This Referee has concluded that the stipulation as to the availability of work which was submitted to Referee Moraca does not extend beyond the date of Referee Moraca's decision. In reaching this conclusion, this referee has considered that the claimant never returned to any employment, that no evidence as to the availability of such employment has been submitted, and that the claimant has not been able to find employment since Referee Moraca's decision.

3. Claimant in this case is not required to show that his compensable injury has changed since Referee Moraca's decision dated March 4, 1981.

In response to Greenwich's further appeal, on June 5, 1987, the Board again reversed and remanded for new findings of fact and conclusions of law. The Board, citing *Mancini v. Workmen's Compensation Appeal Board*, 64 Pa.Commw. 484, 440 A.2d 1275 (1982), held that the party seeking a modification has the burden of proof and must show a change in physical condition since the date of the award or agreement sought to be modified. Dillon filed a petition for rehearing, which was granted, but on August 15, 1989, the Board affirmed its previous decision. Dillon's petition for review in Commonwealth Court was quashed as interlocutory, inasmuch as the Board had ordered the matter remanded for further findings of fact and conclusions of law. The referee made no new findings, and applying the law as instructed by the Board dismissed Dillon's petition for modification. The Board subsequently affirmed, incorporating its prior decisions.

On September 22, 1992, the Commonwealth Court affirmed the decision of the Board. The court cited its prior decisions in *J & L Steel Corp. v. Workmen's Compensation Appeal Board (Shutak)*, 145 Pa.Commw. 99, 602 A.2d 467, allocatur denied, 530 Pa. 657, 608 A.2d 32, 530 Pa. 662, 609 A.2d 169 (1992) and *Airco–Speer Electronics v. Workmen's Compensation Appeal Board*, 17 Pa.Commw. 539, 333 A.2d 508 (1975) as "mandating that a party who seeks modification of an award or agreement for compensation has the burden to produce

competent evidence of change in the worker's physical condition since the award or agreement date." Memorandum Opinion at 4. We granted Dillon's petition for allowance of appeal, 534 Pa. 642, 626 A.2d 1160.

Both parties acknowledge that the starting point for analyzing this case is Section 413 of the Workmen's Compensation Act, Act of June 12, 1915, P.L. 736, as amended, 77 P.S. § 772. That section provides that

> A referee designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. . . . And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

As we observed in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), this section "governs the procedure for filing a modification petition" but it "provides no guidelines for ruling on the merits". 516 Pa. at 244, n. 1, 532 A.2d at 376, n. 1. "[T]o date the General Assembly has seen fit to allow the courts to wrestle with this issue." *Id.*

The "change in physical condition" requirement may be traced to *Henderson v. Air Master Corporation*, 2 Pa.Commw. 275, 276 A.2d 581 (1971). In *Henderson*, the claimant's reinstatement petition seeking compensation for total disability was filed after the claimant had received compensation for partial disability for the entire 350 weeks then authorized under the Act. Unlike compensation for total disability, which

has no fixed duration, the Act places a limit on the amount of time that a claimant may receive compensation for partial disability. By the terms of the statute, such compensation ceases when the maximum number of weeks has been reached regardless of whether the claimant's earning power has returned to its pre-injury level or remains at a reduced level on account of the injury.

Henderson had not worked at all since the date of the injury. Under the circumstances, the court viewed his reinstatement petition as an improper attempt to relitigate the original decision awarding him compensation for partial disability rather than for total disability. Thus the court's emphasis on Henderson's failure to show "a change in the percentage of disability from the original determination to the date of the application for reinstatement," 2 Pa.Commw. at 278, 276 A.2d at 582, may be seen as a means of ensuring that the statutory scheme would not be compromised.

The court expounded on this reasoning in *Banks v. Workmen's Compensation Appeal Board,* 15 Pa.Commw. 373, 327 A.2d 404 (1974). In that case the claimant received compensation for total disability for slightly more than a year. The employer then filed a petition for termination or modification. After hearing, the referee dismissed the petition. Five months later, the employer again filed a petition for termination or modification, and this time the petition was granted, the referee awarding benefits for partial disability. Commonwealth Court reversed, finding that the decision was not supported by substantial evidence. The court noted that the employer's physician testified that there had been no change in the claimant's condition from the examination before the first hearing to the examination before the second hearing.

The court applied the holding in *Henderson,* and observed

The efficacy of this holding is made abundantly clear by the fact that [the employer] filed its petition for modification less than five months after the referee's award was made. Absent the requirement of showing a change in disability, a disgruntled employer (or claimant) could repeatedly attack

what he considers an erroneous decision of a referee by filing petitions for modification based on the same evidence ad infinitum, in the hope that one referee would finally decide in his favor. The proper, and only, method of attacking an erroneous decision of a referee is by an appeal to the Board and subsequently to this Court.

15 Pa.Commw. at 377, 327 A.2d at 406.

The same point was made again in *Airco–Speer Electronics v. Workmen's Compensation Appeal Board*, 17 Pa.Commw. 539, 333 A.2d 508 (1975). In that case, the parties entered into an agreement providing for compensation for total disability. Approximately a year and a half later the employer filed a termination petition. After hearing, the referee entered an award reinstating the agreement in modified form, that is, providing compensation for total disability for several months and for partial disability thereafter. Two months later the claimant filed a petition seeking to modify the award to provide compensation for total disability.

The referee granted the petition and the Board affirmed, but the Commonwealth Court reversed, holding that there was no substantial evidence to support the finding that her disability had increased after the date of the award. Despite evidence that following the award the claimant had attempted to perform the job and had been unsuccessful, the court stated that "[h]er ability to perform this job had already been litigated and resolved ... and was not at issue on claimant's present petition to modify. The only issue at this second hearing was whether or not claimant's disability had increased." 17 Pa.Commw. at 542, 333 A.2d at 510.

Finally, in *Cerny v. Schrader & Seyfried*, 463 Pa. 20, 342 A.2d 384 (1975), the referee found that the claimant was not totally disabled because he was able to engage in light work. The Board reversed, awarding total disability benefits because the employer had not shown that light work was available which the claimant was capable of obtaining. Commonwealth Court in turn reversed the Board, holding that the claimant had failed to show an increase in disability.

Citing *Airco–Speer Electronics, Banks,* and *Henderson,* we stated that "it was Cerny's burden, as movant, to prove that his disability had increased after the date of the Referee's award for partial disability." 463 Pa. at 24, 342 A.2d at 386. We observed, however, that this did not require that he prove that he was incapable of performing any job. Stating that the same allocation of burdens of proof should apply to modification proceedings as had been settled upon for initial applications for compensation in *Barrett v. Otis Elevator Company,* 431 Pa. 446, 246 A.2d 668 (1968), we ruled

> that the claimant in a modification proceeding, alleging total disability, initially has the burden of proving an increase in disability and that he is incapable of performing his regular employment. Once having met this burden a finding of total disability is warranted unless the employer discharges his burden of proving that work is available which the claimant is capable of obtaining.

463 Pa. at 25, 342 A.2d at 387. Because neither the referee nor the Board had addressed whether the claimant had established an increase in disability, we vacated the Commonwealth Court order and remanded for a finding of fact on this point.

Greenwich identifies a number of decisions of this Court and Commonwealth Court following *Cerny* applying the rule that a party seeking modification must show a change in the employee's physical condition. *See Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.),* 502 Pa. 178, 465 A.2d 969 (1983); *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.),* 149 Pa.Commw. 362, 614 A.2d 779 (1992); *Klingler v. Workmen's Compensation Appeal Board,* 50 Pa.Commw. 335, 413 A.2d 432 (1980).

Recently, however, in *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams),* 130 Pa.Commw. 479, 568 A.2d 981 (1989), allocatur denied, 527 Pa. 656, 593 A.2d 426 (1990), Commonwealth Court stated "it has long been established in the workmen's compensation area that proof of a change in medical condition is not required *when that is not the basis for seeking a decrease in benefits.*" 130 Pa.Commw. at 484, 568 A.2d at 984–985. (Emphasis added.)

In that case, the parties had signed an agreement providing for compensation for total disability shortly after the employee's injury. Some seven years later, the employer made available to the claimant a light duty job within his medical restrictions. The referee granted the employer's petition for modification, finding that the employer had met its burden of proof that the claimant's disability had been reduced from total to partial as of the date the light duty job was available to him. The Board reversed, finding that the employer had failed to meet its initial burden of showing change in condition, as outlined in *Kachinski.*

In reversing the decision of the Board, Commonwealth Court reproduced the *Kachinski* analysis:

1. The employer who seeks to modify the Claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs) which fits the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on these job referral(s).

4. If the referral fails to result in a job then Claimant's benefits should continue.

*Kachinski,* 516 Pa. at 252, 532 A.2d at 380. The court then observed that "the basis for the referee finding that Claimant's disability had evolved from total to partial was not that Claimant's physical condition had improved," but that "Employer had made a medically approved position available to Claimant." 130 Pa.Commw. at 483, 568 A.2d at 983. The court then concluded that "it is not a prerequisite to produce medical evidence of a change in condition when the Petition for Modification involves a claimant with no improvement whatsoever. Any other reading of the *Kachinski* court's language would be nonsensical." *Id.* The court also cited several of its own cases prior to *Kachinski* where the employ-

er had not been required to prove change in condition when the petition was based on job availability rather than change in physical status.[1]

Dillon argues that "[if] the employer has the right to modify the Referee's Decision based on additional proof of work availability, even if there is no change in claimant's physical status, it is a matter of fairness and equity that the claimant should have the same right." Brief at 11. We agree. Our review of the cases stating otherwise convinces us that they were based on an unwarranted extension of the holding in *Henderson,* beginning with *Airco–Speer,* accompanied by a failure to adequately distinguish between the concepts of "injury" and "disability" in the worker's compensation field.

The *Henderson* rationale—maintaining the integrity of unappealed rulings—is unquestionably a laudable objective. Unlike factual determinations made in cases litigated in the courts, however, determinations of the status of an injured employee's disability are subject to change. The statute itself explicitly provides that "[t]he board, or referee designated by the board, may, *at any time,* modify, reinstate, suspend, or terminate, an original or supplemental agreement or an award, upon petition filed by either party...." (Emphasis added.)

*Henderson* and *Banks* presented unique circumstances where the petitioning party requested a change without producing any evidence that had not already been considered in the initial determination. In *Airco–Speer,* however, the claimant presented evidence that was unavailable to the referee who had made the initial ruling, that is, evidence of her actual attempt to perform the light work offered to her and her inability to do so. Even though only two months had passed since the first referee's decision, this new evidence bearing on

1. *Investors Diversified Services v. Workmen's Compensation Appeal Board (Howar),* 103 Pa.Commw. 562, 520 A.2d 958 (1987); *W & L Sales Co., Inc. v. Workmen's Compensation Appeal Board (Drake),* 92 Pa. Commw. 396, 499 A.2d 710 (1985); *Yellow Cab Co. v. Workmen's Compensation Appeal Board (Drake),* 37 Pa.Commw. 337, 390 A.2d 880 (1978); *Chamberlain Corp. v. Pastellak,* 7 Pa.Commw. 425, 298 A.2d 273 (1973).

the claimant's earning capacity was properly received and considered by the second referee. Commonwealth Court erred in extending the *Henderson* rationale to this situation.[2]

It also appears that "change in physical condition" gained heightened importance as a factor in the movant's burden of proof, to the extent of becoming a separate "requirement", as a result of application of a flawed conception of "disability" under the Act. As we emphasized in *Kachinski,* going back to early cases interpreting the Act, "we determine the degree of a worker's disability by reference to how the injury affected his earning power." 516 Pa. at 248, 532 A.2d at 378, citing *Woodward v. Pittsburgh Engineering and Construction Co.,* 293 Pa. 338, 143 A. 21 (1928) ("The disability contemplated by the act is the loss, total or partial, of the earning power from the injury.") *See also Unora v. Glen Alden Coal Co.,* 377 Pa. 7, 104 A.2d 104 (1954) ("In the interpretation of the Workmen's Compensation Act ... the word 'disability' is to be regarded as synonymous with 'loss of earning power'."); *Petrone v. Moffat Coal Co.,* 427 Pa. 5, 233 A.2d 891 (1967); *Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968).

To the extent that cases such as *Airco–Speer Electronic* recognized disability (in the physical sense) as an element *distinct* from loss of earning power, they deviated from proper interpretation of the Act. Inasmuch as both capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power), it follows that disability, for compensation purposes, may change from partial to total or vice versa based on a change in one with or without a change in the other. Commonwealth Court correctly recognized this in *Lukens* when it held that the "medical evidence of

2. We recognize the possibility that unscrupulous employers or claimants could abuse the system by filing modification petitions with great frequency. The Act, however, provides that a party may seek modification "at any time". We can do no more to discourage vexatious litigation than enforce the Act by requiring the party seeking the modification to prove what the statute defines as grounds for such: "that the disability ... has increased, decreased, recurred, or has temporarily or finally ceased...." As we observed in *Kachinski,* "[o]bviously the viability of this system depends on the good faith of the participants." 516 Pa. at 252, 532 A.2d at 380.

a change in condition" criterion recognized in *Kachinski* applies only when the employer "seeks to modify a claimant's benefits *on the basis that he has recovered some or all of his ability,*" *Kachinski,* 516 Pa. at 252, 532 A.2d at 380 (emphasis added), and such proof "is not required when that is not the basis for seeking a decrease in benefits." *Lukens,* 130 Pa. Commw. at 484, 568 A.2d at 984.

This analysis is consistent with the reasoning we employed in *Pieper v. Ametek–Thermox Instruments,* 526 Pa. 25, 584 A.2d 301 (1990). There, we considered the burden of proof of a claimant seeking reinstatement of compensation where benefits had been suspended due to the claimant's return to full-time employment. We distinguished this situation from circumstances where a claimant sought reinstatement after the liability of the employer for the injury had been terminated. We observed that

> A "suspension of benefits" is supported by a finding that the earning power of a claimant is no longer affected by his disability, whether it arises from his employer offering suitable replacement employment, or from the ability of the claimant to secure other suitable employment that provides equal or greater compensation. Should a claimant seek to have a suspension lifted, he is required to demonstrate only that the reasons for the suspension no longer exist.

526 Pa. at 33, 584 A.2d at 304. We explained that "the causal connection between the original work-related injury and the disability which gave rise to compensation is *presumed,*" *id.* at 33, 584 A.2d at 305 (emphasis in original), for two reasons. First, because the causal connection was established at the time of the original claim, and second, because

> with a mere suspension of benefits, there is no contention by either party that the liability of the employer has terminated. The only fact established at a suspension of benefits is that the *earning power* of a claimant has improved to a point where benefits are no longer necessary.... Therefore, in these situations the causal connection between the

original work-related injury and the disability goes unquestioned.

*Id.* Ultimately, we concluded that

since many months or years may pass before the economic condition of a claimant forces him to apply for reinstatement of benefits, the law requires him to prove two things in order to show that the reasons for the suspension no longer exist.... First, he must prove that through no fault of his own his earning power is once again adversely affected by his disability. And Second, that the disability which gave rise to his original claim, in fact, continues....

*Id.* (Citations and footnotes omitted.)

Notwithstanding the sometimes imprecise use of the term "disability", these passages from *Pieper* demonstrate that the elements of the burden of proof on a claimant seeking to change the status of his benefits will differ depending on whether the employer's liability has previously been terminated or merely held in abeyance. For this purpose, at least, an award of benefits for partial disability may be viewed as a "partial suspension" of benefits: the causal connection has been established, the employer's liability for the injury has not terminated but the claimant's earning power is such that benefits for total disability are not necessary, benefits for partial disability being sufficient.[3] If a claimant whose benefits have been entirely suspended may have them reinstated on proof "that through no fault of his own his earning power is once again adversely affected" by the injury which gave rise to

---

**3.** It is interesting to note that the Act itself accords a certain similarity of character to suspension of compensation and compensation for partial disability in the final proviso of section 413. "... And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury." 77 P.S. § 772. Thus an employee who returns to work at wages equal to or greater than his pre-injury wages, and thus has his compensation suspended, is in the same position after 500 weeks, see 77 P.S. § 512, as an employee who returned to work at reduced wages and thus received compensation for partial disability, i.e., the employer's liability for benefits is terminated.

his original claim, we can discern no basis for requiring a claimant who receives benefits for partial disability to prove more, i.e., that his physical condition due to his injury has worsened.

It appears, then, that the referee who decided this matter on February 6, 1984, correctly assigned the burden of proof to Dillon as the party seeking the modification, and correctly concluded that the petition should be granted if Dillon proved that he was then unable to obtain any work within the physical limitations caused by his work-related injury. We have reviewed the record and conclude that the referee's findings that Dillon was able to perform sedentary work but that there was no work of this type available to him are supported by substantial evidence. The Board committed an error of law in reversing the award of compensation for total disability which was based on these findings.

The order of the Commonwealth Court affirming the order of the Workmen's Compensation Appeal Board is reversed. The referee's decision dated February 6, 1984, awarding compensation for total disability as of January 15, 1982, is reinstated.

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.