**Alfred NAPIERSKI, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Scobell Company, Inc. and Cincinnati Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2012.

Decided Jan. 10, 2013.

Stacey K. Baltz, Erie, for petitioner.

Robert P. Walter, Pittsburgh, for respondent Scobell Company, Inc.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Alfred Napierski (Claimant), who is receiving partial disability benefits, has petitioned for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying his request for a reinstatement to total disability benefits.

Claimant sought a reinstatement after his employer Scobell Company, Inc. (Employer) declined to give him a job. In denying Claimant a reinstatement, the Board affirmed the holding of the Workers' Compensation Judge (WCJ) that because Claimant had previously refused a light-duty job in bad faith, he was required to show that his work injury had worsened and he was unable to do the light-duty job before he could be reinstated to total disability. Claimant was not relieved of this burden simply because the job he had refused in bad faith was a position funded by Employer.[1] Discerning no error, we affirm.

This case involves significant prior litigation between the parties that dates back to July 28, 1995. On that day, Claimant, employed as a plumber, injured his left leg when a ditch in which he was working collapsed. Employer accepted liability for the injury and began paying Claimant total disability benefits of $509 per week.

Thereafter, Employer referred Claimant to Expediter Corporation, a company that helps employees return to work. Expediter found Claimant a full-time sedentary job with Information Direct, Inc. (IDI), working 40 hours per week in telephone customer service. The job was funded by Employer and paid less than Claimant's pre-injury wage. Claimant's physician approved the job.

Claimant began working in October 2004. IDI moved Claimant to a second office in March 2005 and to a third office in August 2005. These office moves were necessitated by problems in the offices, including heating malfunctions and a mouse infestation. When Claimant noticed mouse feces in paperwork that had been imported from the second office location to the third, Claimant quit on the spot, concluding that Employer was "playing games" with him. Reproduced Record at 76a (R.R.——); WCJ Decision, August 17, 2007, at 8, Finding of Fact 9.

■ Employer filed a modification petition, which the parties litigated before a WCJ.[2] The WCJ found that the IDI telephone job fell within Claimant's capabilities but became unavailable to Claimant in January 2005, when the office heating malfunctioned. However, the job later became available to Claimant by August 19, 2005, at the third office location. The WCJ found that Claimant refused in bad faith to work there. Accordingly, the WCJ modified Claimant's benefits to a partial disability rate of $374.86 per week, based on what he would have earned at IDI, "commencing August 19, 2005 and continuing into the future until such time as Claimant's disability changes in nature or degree[.]" R.R. 82a; WCJ decision, August 17, 2007, at 14, Order.

Both Claimant and Employer appealed. The Board granted Employer's appeal by extending the period of partial disability

1. In funded employment, the claimant works for a new employer but is paid by the time-of-injury employer. *Sladisky v. Workers' Compensation Appeal Board (Allegheny Ludlum Corporation)*, 44 A.3d 98, 100 n. 2 (Pa. Cmwlth.), *petition for allowance of appeal denied*, —— Pa. ——, 56 A.3d 398 (2012).

2. An employer may obtain a modification if it can show that suitable employment was made available to the claimant. *Kachinski v. Workmen's Compensation Appeal Board (Vepco*

*Construction Company)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987). Once the employer proves that it referred the claimant to an available job, the burden shifts to the claimant to prove that he followed through on the job referral in good faith; if he cannot, benefits will be modified to partial disability. *Id.* Because Claimant was injured prior to the June 1996 statutory amendment providing for labor market surveys, Employer was obligated to refer him to a specific job.

benefits for the entire period of time Claimant worked at the job from October 15, 2004, until January 23, 2005. It affirmed in all other respects. Claimant petitioned for review, and this Court affirmed the Board. *Napierski v. Workers' Compensation Appeal Board (Scobell Company)*, (Pa.Cmwlth., No. 1515 C.D. 2008, filed January 28, 2009). On August 18, 2009, the Pennsylvania Supreme Court denied Claimant's petition for allowance of appeal. *Napierski v. Workers' Compensation Appeal Board (Scobell Company)*, 603 Pa. 706, 983 A.2d 1250 (2009).

On June 30, 2010, Claimant asked Employer to fund the job for him again so that he could return to work. Receiving no response from Employer, Claimant filed the instant reinstatement petition, seeking to have his partial disability benefits reinstated to total because the funded employment was no longer available to him. Employer filed an answer denying that Claimant was entitled to a reinstatement for that reason.

The petition was assigned to a WCJ, who conducted a hearing. Claimant and Employer both appeared but neither party presented testimony, agreeing that the issue was a purely legal one. The parties stipulated that when the prior litigation did not produce a favorable result for Claimant, he asked Employer to make the funded job available to him again. Employer declined because it believed it was not legally required to do so.

The WCJ denied Claimant's petition for reinstatement to total disability benefits.[3] The WCJ concluded that because his benefits had been modified for his bad faith refusal to work, Claimant was required to prove that his medical condition had worsened to the point that he could no longer do the telephone job with IDI. Claimant did not do so. The WCJ found it irrelevant that the job was a funded position because job availability was no longer an issue. The WCJ concluded that it would be "unfair to allow a Claimant to avoid the legal determination of bad faith in refusing available, modified employment ... by years later asking for the job" and again forcing Employer to show job availability. R.R. 102a; WCJ Decision, January 6, 2011, at 4, Finding of Fact 9. Claimant appealed, and the Board affirmed. Claimant then petitioned for this Court's review.[4]

On appeal, Claimant argues that the WCJ and the Board erred. Claimant asserts that funded employment presents a special situation that should not be governed by precedent established in the context of a claimant's bad faith refusal to take a light-duty job with the employer. In other words, Claimant believes that leaving a funded job in bad faith does not relieve the employer of having to provide a job to a claimant who comes to regret his earlier refusal of a job. Employer responds that the nature of the employment refused, whether funded or not, is immaterial.

---

3. Employer had moved to dismiss Claimant's petition based on *res judicata* and collateral estoppel, arguing that Claimant was attempting to re-litigate the prior WCJ's determination that Claimant acted in bad faith by not performing the IDI job at the third office location. The WCJ denied the motion, concluding that Claimant was not trying to re-litigate bad faith. This denial is not at issue on appeal.

4. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

A claimant is entitled to a reinstatement of benefits if he can show that the reason for the suspension or modification no longer exists. *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 502, 640 A.2d 386, 392 (1994) (quoting *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 33, 584 A.2d 301, 304 (1990)). Typically, a partially disabled claimant can reinstate to total disability by showing that his earning power is once again adversely affected by his work injury. *Dillon*, 536 Pa. at 503–04, 640 A.2d at 392–93. The claimant is entitled to a reinstatement to total disability where his light-duty job has been eliminated and the employer cannot show that there is other employment available to the claimant. *Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Laubach)*, 563 Pa. 313, 321–22, 760 A.2d 378, 382–83 (2000).

A claimant's burden of proof is different where his benefits have been modified because of his bad faith conduct. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 (Pa.Cmwlth.2009). In this context, bad faith does not mean "overt malfeasance on the part of the claimant, but is merely the characterization of Claimant's action for refusing to follow up on a job referral without a sufficient reason." *Johnson v. Workmen's Compensation Appeal Board (McCarter Transit, Inc.)*, 168 Pa.Cmwlth. 439, 650 A.2d 1178, 1180 (1994).

In *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.)*, 149 Pa.Cmwlth. 362, 614 A.2d 779 (1992), the claimant's benefits were modified to partial disability after he refused two light-duty positions his employer had offered him. Three weeks after the WCJ issued his decision, the claimant offered to return to work, but his employer informed him that the light-duty jobs were no longer available even though the positions had never been filled. The claimant then filed for reinstatement, and this Court refused the reinstatement. In doing so, we reasoned as follows:

> Where we have a finding that a claimant has failed to pursue jobs in good faith, *we do not believe the employer has the responsibility of keeping a job open indefinitely, waiting for the claimant to decide when he wants to work.* As the board states in its decision, claimant's loss of earning power is not due to his disability, but due to his lack of good faith in pursuing work made available to him which was within his physical limitations. *In order to receive a reinstatement of total disability benefits, claimant must prove a change in his condition such that he could no longer perform the jobs previously offered to him.*

*Id.* at 780 (emphasis added).

Our Supreme Court adopted this reasoning in *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 590 Pa. 99, 912 A.2d 206 (2006), holding that a claimant's bad faith refusal of employment relieves the employer of the need to show that a job continues to be available. The Court explained:

> *An employer cannot be given a never-ending duty to keep a job available for a claimant who rejects it in bad faith.* If we allowed a claimant to reject a job in bad faith and then place a burden on the employer to provide the claimant another job whenever he chooses, we would reward bad faith conduct and circumvent the purpose of the Workers' Compensation Act.[5]

---

5. Act of June 2, 1915, P.L. 736, *as amended,* 77 PS. §§ 1–1041.4, 2501–2708.

*Id.* at 104, 912 A.2d at 209 (emphasis added).

■ To recap, once a claimant has refused an available job in bad faith, his employer's obligation to show job availability ends. *Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain Corporation),* 158 Pa.Cmwlth. 547, 632 A.2d 596, 600 (1993). The claimant must "live with the consequences of [his] decision," meaning that he cannot remedy the situation "by subsequent action" such as attempting to accept the job that was previously offered. *Johnson,* 650 A.2d at 1182. Instead, the claimant must show a worsening of his medical condition to be granted a reinstatement to total disability. *Ward,* 966 A.2d at 1162.

■ Claimant acknowledges this precedent but contends that the rule should be different where the position refused is a funded position. First, he argues that because it was not established in the earlier litigation whether the funded job was going to be indefinite or temporary, Employer must again offer him a job. Second, he argues that because the funded job was created for Claimant, Employer could easily do it again.

In support, Claimant directs the Court to *General Electric Company v. Workers' Compensation Appeal Board (Myers),* 578 Pa. 94, 849 A.2d 1166 (2004) (plurality opinion). There, Expediter Corporation had set up a customer service telephone job for the claimant. When the claimant refused the job, the employer filed a modification petition. Finding that the job was within the claimant's capabilities and was refused in bad faith, the WCJ modified the claimant's benefits. However, because the evidence showed that the job was to be funded only for 90 days, the WCJ modified benefits for 90 days. This Court affirmed, as did our Supreme Court. In doing so, the Supreme Court held that funded employment is a legitimate way for an employer to return an injured claimant to work. However, if the job "is only temporarily available *from the outset,* meaning that the claimant is bound to lose the job through no fault of his own at a definitive point in the future," then the claimant's benefits can be modified only for the duration of the employer's subsidy. *Id.* at 113, 849 A.2d at 1177 (emphasis in original).

*Myers* is inapposite. The issue in *Myers* was modification of benefits not reinstatement. The question was whether the job was within the claimant's capabilities and how long the job would last, as is the case in any modification. Here, the parties have already litigated the modification of Claimant's benefits, and Claimant did not present any evidence that the funded job was of limited duration. For that reason, the WCJ modified Claimant's benefits on an ongoing basis, without limitation.

Claimant refers to his funded job as "temporary," but there is no evidence to support this assertion. Claimant suggests that his position must have been temporary because the Expediter Corporation was involved in both *Myers* and the instant case. This is irrelevant, and there is no foundation for Claimant's contention. In *Myers,* there was evidence that the employer intended to limit its commitment to fund the claimant's job. There is no such evidence here.

The availability of a job "from the outset" is an issue for a modification proceeding, not a reinstatement proceeding. *See Sladisky v. Workers' Compensation Appeal Board (Allegheny Ludlum Corporation),* 44 A.3d 98, 103–04 (Pa.Cmwlth.), *petition for allowance of appeal denied,* —— Pa. ——, 56 A.3d 398 (2012) (explaining that issues concerning the offer of a funded job are to be raised during

modification petition litigation, not in a reinstatement for total disability after the job ends). *See also Bennett,* 632 A.2d 596, 600 (holding that "determination of the duration of the position, either temporary or permanent, is to be made at the time of the referral and is to be based upon the information available to the employer and claimant *at the time of the referral.*" (emphasis added)).[6] Claimant is questioning the funded job's availability when (1) that issue has been fully adjudicated, and (2) there has never been any evidence that the job was not intended to be permanent when originally offered.

Next, Claimant argues that because the job was created especially for him, Employer can make the job available for him again. Again, there is no evidence to support this assertion. The only evidence from the modification litigation was that the Expediter Corporation found Claimant a job with IDI; Claimant interviewed for the job; and he was hired. It is not known whether the job was created or already existed, but it does not matter. *Spinabelli* involved two jobs that the employer "specially created" for the claimant, and this Court held that the employer did not have to keep them available after the claimant refused them in bad faith. Once the claimant refuses any kind of job in bad faith, whether funded or specially created for the claimant, job availability ceases to be an issue. It matters not that an employer might be able to provide another job for the claimant; it cannot be forced to do so more than once.

Claimant refused, in bad faith, to work at a job he was capable of performing. In order to have his benefits reinstated, he was required to prove that his physical condition had worsened so that he could not do the job provided to him at IDI. He did not do so.

For these reasons, the order of the Board is affirmed.

### ORDER

AND NOW, this 10th day of January, 2013, the order of the Workers' Compensation Appeal Board dated February 2, 2012, in the above captioned matter is hereby AFFIRMED.

**6.** In *Bennett,* the claimant refused an available job in bad faith, but the company was sold and the job was no longer available approximately eight weeks after he refused it. The claimant argued that his employer was not entitled to an ongoing modification because the job turned out to be temporary. This Court disagreed with the claimant's reasoning, holding that as long as the job was permanent when offered, benefits would be modified indefinitely. 632 A.2d at 600. Our Supreme Court granted the petition for allowance of appeal and remanded *Bennett* on other grounds, 537 Pa. 433, 644 A.2d 729 (1994).