IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Overbrook Golf Club,                    :
                    Petitioner          :
                                        :
        v.                              :    No. 940 C.D. 2021
                                        :    Submitted: January 28, 2022
Mark Scott (Workers'                    :
Compensation Appeal Board),             :
                    Respondent          :

BEFORE:     HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                          FILED:  June 17, 2022

        Overbrook Golf Course (Employer) petitions for review of an
adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the
decision of a workers' compensation judge (WCJ).  In that decision of November 6,
2020, the WCJ granted Employer's petition to modify the compensation benefits of
Mark Scott (Claimant); denied Employer's petition to suspend compensation
benefits; and reinstated Claimant's temporary total disability benefits as of
November 19, 2017.  Upon review, we affirm the Board, albeit on different grounds.

        Claimant worked 7 years, 50 to 55 hours per week, as a pot washer in
Employer's kitchen.  On May 6, 2017, he was injured when he tripped over a mat
and fell backwards onto a concrete floor.  Later that month, he was released to work
light duty and returned to work washing dishes, instead of pots.  Subsequently, when
Claimant's low back and leg symptoms increased, he reduced his hours to three days
per week.

In an October 12, 2018, decision, the WCJ granted compensation benefits to Claimant, concluding that he had been injured in the course of his employment with Employer. The WCJ awarded Claimant temporary total disability (TTD) benefits and partial disability benefits beginning May 7, 2017, during the times that Claimant worked. The WCJ defined Claimant's work injury as a "work-related aggravation of degenerative disc disease at L5-S1 resulting in left-side lumbar radiculopathy in addition to a low back strain." WCJ Decision, 11/6/2020, at 3, Finding of Fact (F.F. __) No. 8. The WCJ denied Employer's modification and suspension petitions because Employer had not established that it made "a specific job offer" to Claimant. *Id.*

Employer appealed to the Board. On January 29, 2020, the Board issued an adjudication remanding the matter to the WCJ for "more specific consideration of the conflicting evidence pertaining to Employer's request for modification and suspension." WCJ Decision, 11/6/2020, at 4, F.F. No. 10 (summarizing Board remand order). Specifically, Claimant's expert, Michael McCoy, M.D., testified that Claimant could work three days per week for eight hours per day, but the WCJ did not state whether it credited this opinion. Noting that Claimant had returned to work two or three days per week, the Board observed that Employer had, in fact, tried to accommodate Claimant. The Board concluded that the conflicting evidence on Claimant's ability to work in July of 2017, when Employer tendered its job offer, "merits a remand for specific consideration and more detailed findings of fact." Board Adjudication, 1/29/2020, at 10; Reproduced Record at 57a (R.R. __). Accordingly, the Board remanded to the WCJ for further consideration of the evidence, "specifically for consideration of the testimony of Dr. McCoy[.]" *Id.* at 11; R.R. 58a.

2

Upon remand, the parties informed the WCJ that no additional evidence would be submitted. Accordingly, the WCJ made his remand decision on the basis of the existing record.

The WCJ found that Claimant missed a week or two of work after his injury; returned to modified duty with a lifting restriction of 20 pounds; and thereafter was in and out of work. Employer accommodated Claimant's work restrictions, allowing Claimant to work as a dishwasher two or three days a week with fewer hours. Claimant would leave early when his pain worsened. Claimant did not receive partial disability benefits for the time he missed work. Claimant stopped working entirely sometime between July and September 2017.[1] Claimant acknowledged that he did not respond to a July 25, 2017, offer of employment because he did not believe he could do the job. Employer terminated Claimant's employment on November 29, 2017, for the stated reason that Claimant never responded to its job offer.

On cross-examination, Claimant agreed that he stopped working in July 2017, at a time when a modified duty job within his restrictions was available to him for 40 hours per week. Claimant testified that he did not respond to Employer's July 2017 offer of a position as a kitchen utility worker because he had been taken out of work entirely by Dr. Francis Burke, his treating physician from WorkNet.

In his October 23, 2017, deposition, Dr. McCoy opined that Claimant could perform modified duty with a 20-pound lifting restriction from July 17, 2017, and thereafter. On cross-examination, Dr. McCoy testified that he was not certain that Claimant was able to work a 40-hour week but would allow Claimant to work modified duty for 8 hours per day, 3 days per week.

---

[1] On cross-examination, Claimant agreed that he had no reason to dispute that July 20, 2017, was his last day at work with Employer.

3

The WCJ modified Claimant's benefits to temporary partial disability benefits based on 24 hours of available light duty work from July 25, 2017, through November 18, 2017. The WCJ found that the modified duty job ceased to be available on and after November 19, 2017, when Employer terminated Claimant's employment. Accordingly, the WCJ reinstated Claimant's TTD benefits as of that date. The WCJ determined that Employer did not establish that Claimant's disability benefits should have been suspended during the period of July 25, 2017, through November 18, 2017, reasoning that Dr. McCoy did not approve Claimant to return to work for 40 hours per week. Thereafter, Norman Stempler, D.O., credibly testified that as of November 13, 2017, Claimant was not physically able to perform any type of work, including the position offered by Employer on July 25, 2017. In any case, that position ceased to be available when Employer terminated Claimant's employment on November 19, 2017. Based on these findings, the WCJ modified Claimant's benefits to temporary partial disability benefits from July 25, 2017, through November 18, 2017, and reinstated Claimant's TTD benefits as of November 19, 2017. Employer appealed to the Board.

In its review of the WCJ's remand decision, the Board addressed Employer's argument that "the WCJ failed to make a finding regarding Claimant's lack of good faith follow up on the job offer." Board Adjudication, 8/18/2021, at 10; R.R. 91a. The Board focused on the WCJ's finding that as of November 13, 2017, Claimant could not work at any job. The Board explained as follows:

> Once Claimant established an inability to return to his pre-injury position, the onus was on [Employer] to establishing [sic] entitlement to a modification or suspension. On remand, the WCJ specifically found that [Employer] was, in fact, entitled to a modification of Claimant's benefits based on the fact that modified duty within his restrictions was available as of July 25,

4

2017[,] and he failed to follow up on [Employer's] job offer. We disagree that anything more was required.

*Id.* at 11; R.R. 92a (citation omitted). The Board added:

The WCJ essentially found that Claimant failed to follow up in good faith on suitable work offered as of July 2017. The WCJ did not find that the reasons for Claimant's discharge from employment in November 2017 showed a lack of good faith. According to [Employer's witness], the job was available to Claimant from the time of the job offer to the time of Claimant's termination. Given all of this, we see no error in the determination that the job offer was not available after that date.

*Id.* at 10-11; R.R. 91a-92a.

Noting the WCJ accepted Dr. Stempler's testimony that Claimant was not capable of work as of November 13, 2017, the Board explained that "the WCJ could have ordered a reinstatement as of November 13 but chose to order it as of November 19, 2017," the effective date of Claimant's termination of employment. Because the WCJ's remand decision contained all necessary findings and allowed for adequate review, the Board rejected Employer's contention that the WCJ's decision was not reasoned. Employer then petitioned for this Court's review.[2]

On appeal, Employer raises two issues. First, it argues that the WCJ and the Board misapplied the burden on the petitions and, thus, erred in determining that Claimant's TTD benefits should be reinstated effective November 19, 2017. Second, it argues that the WCJ's finding that Dr. Stempler was credible was inconsistent with the WCJ's reinstatement of Claimant's TTD benefits on a date other than the date of Dr. Stempler's examination.

---

[2] Our standard of review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

5

We begin our analysis with a review of the applicable legal principles. A suspension or modification is appropriate where the work injury no longer impairs the claimant's earning power. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015). Our Supreme Court has established that the employer must prove job availability, or there will be a presumption of total disability. *Barrett v. Otis Elevator Company*, 246 A.2d 668, 672 (Pa. 1968). An employer must demonstrate that the job offer will return the claimant to productive employment, not just avoid payment of compensation. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 532 A.2d 374, 379-80 (Pa. 1987). Once a claimant demonstrates a loss of earning power as a result of the work injury, the burden of proving the availability of suitable employment is on the employer. *Presby Homes and Services v. Workers' Compensation Appeal Board (Quiah)*, 982 A.2d 1261, 1266 (Pa. Cmwlth. 2009). The WCJ must then determine whether the claimant can perform the available job. *General Electric Company v. Workers' Compensation Appeal Board (Myers)*, 849 A.2d 1166, 1172-73 (Pa. 2004) (plurality opinion). A claimant is required to make a good faith effort to work at an available job in order to avoid modification of benefits under the Workers' Compensation Act (Act).[3] The term "bad faith" in this context is merely the characterization of a claimant's action in refusing to follow up on a job referral with sufficient reason. *Kachinski*, 532 A.2d at 380.

In its first issue, Employer argues that the WCJ and the Board misapplied the burden of proof on the petitions and, thus, erred in reinstating Claimant's benefits effective November 19, 2017. "The WCJ essentially found that

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

6

Claimant failed to follow up in good faith on suitable work offered as of July 2017." Board Adjudication, 8/18/2021, at 10; R.R. 91a. For that reason, the WCJ modified Claimant's TTD benefits to partial disability benefits from July 25, 2017, through November 18, 2017. The WCJ found no medical support for Claimant's contention he had been taken out of his modified duty job in July 2017. Claimant testified that he had been taken out of work by Dr. Burke, a WorkNet physician. However, the WCJ found that there was no documentary evidence to support Claimant's understanding in this regard, and Dr. Burke did not testify. In addition, Employer's witness credibly established that the modified duty job offered to Claimant on July 25, 2017, was within Claimant's restrictions. Employer argues that the lack of available work was Claimant's responsibility because he never responded to Employer's job offer, which constitutes bad faith.

A claimant is entitled to a reinstatement of benefits if he can show that the reason for the modification of his benefits no longer exists, typically "by showing that his earning power is once again adversely affected by his work injury." *Napierski v. Workers' Compensation Appeal Board (Scobell Company, Inc. and Cincinnati Insurance Company)*, 59 A.3d 57, 61 (Pa. Cmwlth. 2013). However, "[a] claimant's burden of proof is different where his benefits have been modified because of his bad faith conduct." *Id.* "[O]nce a claimant has refused an available job in bad faith, his employer's obligation to show job availability ends." *Id.* at 62. "Instead, the claimant must show a worsening of his medical condition to be granted a reinstatement to total disability." *Id.*

In *Myers*, our Supreme Court noted a caveat to this general rule. There, the Supreme Court stated:

> [w]hile a claimant's benefits are generally modified indefinitely
> after a bad faith refusal, they may be modified only temporarily

7

in circumstances in which the job was clearly temporary at the time it was referred to the claimant . . . . "[W]here a claimant acts in bad faith in refusing suitable and available work, permanent at the time it is offered, the claimant's benefits are reduced by the amount of earnings the job would have produced. Where a claimant acts in bad faith in refusing a position which is only a temporary job when offered, benefits will be modified for a period equal to the length of the time the job was actually available. The determination of the duration of the position, either temporary or permanent, is to be made at the time of the referral and is to be based upon the information available to the employer and claimant at [that time]."

*Myers*, 849 A.2d at 1176 (quoting *Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain Corporation)*, 632 A.2d 596, 600 (Pa. Cmwlth. 1993)). The employer is not required to demonstrate job availability where the employee originally refused the job offer in bad faith, *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 208 (Pa. 2006), or to keep "a job open indefinitely, waiting for the claimant to decide when he wants to work," *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.)*, 614 A.2d 779, 780 (Pa. Cmwlth. 1992).

In the present case, the WCJ did not base Claimant's reinstatement on Dr. Stempler's credited opinion. Rather, the WCJ based the reinstatement on the lack of availability of the position, which, in and of itself, does not support a restoration of Claimant's TTD benefits. Because Claimant engaged in bad faith conduct by not accepting the modified-duty position prior to the worsening of his condition, his benefits were properly modified. We agree with Employer that the WCJ applied the wrong burden of proof in the reinstatement of Claimant's TTD benefits.

However, the WCJ had a basis for reinstating Claimant's TTD benefits on the basis of Dr. Stempler's credited testimony that Claimant was unable to perform any work. Thus, even though Employer is correct in its argument about the application of the burden of proof, we must affirm the reinstatement of Claimant's TTD benefits because Claimant proved a worsening of his condition.

In its next issue, Employer contends that the WCJ's finding that Dr. Stempler was credible was inconsistent with the WCJ's reinstatement of benefits as of November 19, 2017, rather than November 13, 2017, the date Dr. Stempler took Claimant off work. Employer suggests it makes no sense that the WCJ reinstated Claimant's benefits *five days after* Dr. Stempler's determination. Employer summarizes the situation as follows:

> It appears, based on the findings of fact, that the WCJ could not determine whether Claimant's benefits should have been reinstated to total due to: (1) the modified duty no longer being available (because Claimant['s employment had been] terminated); or (2) because Dr. Stempler determined Claimant was unable to perform any work as of November 13, 2017 ([the] date Dr. Stempler first saw Claimant and took him out of work).

Employer Brief at 22.

There is no dispute that the WCJ reinstated Claimant's benefits on the basis of Dr. Stempler's credited testimony. Section 422(a) of the Act requires that the WCJ author a reasoned decision. It reads, in pertinent part, as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section.

9

> When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

Section 422(a) of the Act, 77 P.S. §834. The WCJ's decision was reasoned in that he explains the basis for the outcome, namely Dr. Stempler's credited opinion that as of November 13, 2017, Claimant was not able to work at any job.

The record supports the modification of Claimant's benefits from total to partial disability from July 25, 2017, through November 12, 2017, based on Dr. McCoy's credited opinion that Claimant could work 24 hours a week and was available to work. However, Dr. Stempler's credited opinion established that Claimant's condition worsened and that he could no longer work in any position as of November 13, 2017. Because Claimant did not cross-appeal the November 19, 2017, date of his reinstatement, it cannot be revised to November 13, 2017.

For these reasons, we affirm the Board on the basis that Dr. Stempler's credited opinion established that Claimant is unable to work in any capacity. The lack of availability of a position with Employer as of November 19, 2017, did not support reinstatement. At most, it supports the end date of the modification of Claimant's benefits.[4]

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[4] "We may affirm on different grounds where grounds for an affirmance exist." *City of Pittsburgh v. Logan*, 780 A.2d 870, 878 n.10 (Pa. Cmwlth. 2001).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Overbrook Golf Club,          :
          Petitioner      :
                              :
         v.              : No. 940 C.D. 2021
                              :
Mark Scott (Workers'        :
Compensation Appeal Board),   :
         Respondent   :

## **O R D E R**

AND NOW, this 17th day of June, 2022, the order of the Workers' Compensation Appeal Board, dated August 18, 2021, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita